# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 897 | **DATE** | 3/28/2003 |
| **CASE TITLE** | CHARLIE MIHALOVITS, et al vs. VILLAGE OF CRESTWOOD, et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 4/18/2003 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The Court grants in part and denies in part defendants' motion for summary judgment [108-1]. ENTER MEMORANDUM OPINION AND ORDER.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. |
|---|---|
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

CG | courtroom deputy's initials

number of notices

MAR 3 1 2003
date docketed

6✓
docketing deputy initials

date mailed notice

Document Number

**129**

U.S. DISTRICT COURT
CLERK
03 MAR 28 PM 4:19
FILED-ED 10

Date/time received in central Clerk's Office

mailing deputy initials

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION



CHARLIE MIHALOVITS and )
FRANK MIHALOVITS, by their )
mother and next friend, )
CHARLOTTE MIHALOVITS, )
                         )
      Plaintiffs, )
                         )      **Judge Ronald A. Guzmán**
      v. )
                         )      **00 C 897**
VILLAGE OF CRESTWOOD, )
CHESTER STRANCZEK, as Mayor )
of the Village of Crestwood, )
CRESTWOOD POLICE DEP'T,[1] )
JAMES ARVANITES, as Chief of the )
Crestwood Police Department, CITY OF )
BLUE ISLAND, BLUE ISLAND )
CIVIL SERVICE COMMISSION, )
BLUE ISLAND FIRE DEP'T,[2] )
BLUE ISLAND PARK DISTRICT,[3] )
BLUE ISLAND UNTOUCHABLES )
FOOTBALL ORGANIZATION, )
an unincorporated association, and )
THOMAS BROUKAL, individually and )
as agent, servant and employee of the )
Village of Crestwood, )
                         )
      Defendants. )

## MEMORANDUM OPINION AND ORDER

Charlotte Mihalovits, on behalf of her sons, Charlie and Frank Mihalovits, has sued the

Village of Crestwood, Chester Stranczek, Mayor of the Village of Crestwood, in his official capacity,

James Arvanites, Chief of the Crestwood Police Department, in his official capacity, the City of Blue

---

[1]Crestwood Police Department was dismissed from the case on January 1, 2001.

[2]Blue Island Fire Department was dismissed from the case on January 1, 2001.

[3]Blue Island Park District was voluntarily dismissed from the case on April 5, 2002.



Island, the Blue Island Civil Service Commission, and Thomas Broukal, in his individual and official capacity as employee and agent of the Village of Crestwood, for deprivation of their constitutional right to substantive due process as guaranteed by the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 ("section 1983") because Broukal, a part-time police officer and firefighter, sexually abused Charlie and Frank.[4] Plaintiff has also sued the Blue Island Untouchables Football Organization for negligent hiring, retention, and supervision of Broukal because Frank played football for the organization and Broukal was a coach for the organization prior to Broukal's abuse of Frank. Defendants have moved for summary judgment.[5] For the reasons provided in this Memorandum Opinion and Order, the Court grants in part and denies in part defendants' motion.

## FACTS

The following facts are either undisputed or deemed admitted because the party's response failed to comply with Local Rule 56.1. The following does not include any fact that was unsupported by the proponent's citation to the record or that did not comply with Local Rule 56.1.

In 1992, Thomas Broukal was employed as a Village of Crestwood ("Crestwood") police officer, a City of Blue Island ("Blue Island") firefighter, and a football coach for the Blue Island Untouchables Football Organization. (Pl.'s LR56.1(b)(3)(B) ¶ 1.) During 1992, Broukal was

---

[4]In its Memorandum Opinion and Order of January 5, 2001, the Court dismissed plaintiff's state law claims (Counts I and II) against the Village of Crestwood, the City of Blue Island and the Blue Island Civil Service Commission.

[5]Although the defendants have titled their motion as a motion for summary judgment, it is more properly described as a motion for partial summary judgment in the text of their memorandum in support. While plaintiff has sued Broukal for intentional torts in Count VI and VII of the Second Amended Complaint, these counts are not addressed in defendants' motion.

charged with neglect of a child and criminal sexual abuse for an incident involving Broukal's provision of alcohol to and alleged sexual abuse of Richard Arroyo, a sixteen year old boy who attended a party at Broukal's house. (*Id.* ¶ 2.) At trial, Broukal was found guilty of child neglect and not guilty of criminal sexual abuse. (*Id.* ¶ 8.)

After his court-imposed supervision ended, Crestwood reappointed Broukal as a part-time police officer and the Blue Island Untouchables allowed Broukal to resume his duties coaching grade school children. (*Id.* ¶¶ 9, 15.) The record does not show whether Broukal was ever suspended from or disciplined by the Blue Island Fire Department during the pendency of the charges against him or after his conviction for child neglect relating to the Arroyo incident.

In the Summer of 1998, Charlie Mihalovits was arrested for shoplifting at Target in Crestwood. (*Id.* ¶ 18.) Crestwood Juvenile Officer Mark Werner decided to allow Charlie to serve community service as opposed to bringing charges in juvenile court. (*Id.* ¶ 19.) Werner made the decision to place Charlie at the Blue Island Fire Department to serve his community service. (*Id.* ¶ 25.) He told Charlie that Broukal was the contact person at the Blue Island Fire Department.[6] (*Id.*) Werner told Charlie that Broukal would be the person who would inform Werner as to whether his community service was successfully completed. (*Id.*, at 45.) It is Werner's normal practice to tell juveniles that if they fail to comply with the conditions that were set in the station adjustment, that a petition could be lodged in the court, the state's attorney could file charges, and the juvenile could end up going to court. (*Id.*, at 41.)

---

[6]In fact, Werner assigned Broukal as a contact for any juvenile who performed community service at the Blue Island Fire Department. (*Id.* ¶ 23.) Werner did not talk to anyone other than Broukal concerning community service work conducted at the Blue Island Fire Department. (Pl.'s Ex. 16, Werner Dep., at 27.)

Crestwood's Chief of Police knew that Werner assigned juveniles to do community service outside the Village of Crestwood. (Pl.'s LR56.1(b)(3)(B) ¶ 24.) Werner had the authority to choose the sites where community service would be performed. (*Id.* ¶ 21.) Werner had set up the Blue Island Fire Department as a community service site because Broukal worked there as a firefighter. (*Id.* ¶ 22.) Werner is a friend of Broukal and they spend time together outside of work. (*Id.* ¶ 40.) Werner was aware of the criminal proceedings against Broukal and the outcome of the trial relating to the Arroyo incident. (*Id.* ¶ 35.) Despite this knowledge, Werner made no efforts to obtain other information regarding Broukal's arrest on these criminal charges other than talking to Broukal himself about the outcome of the trial. (*Id.* ¶ 36.) Even though Werner is a juvenile officer, Broukal's conviction for an offense related to a juvenile did not give Werner any concern. (*Id.* ¶ 39.)

No acts of abuse occurred when Charlie was performing community service at the Blue Island Fire Department. (Defs.' LR56.1(a)(3) ¶ 128.) Charlie states that he was sexually abused by Broukal on four occasions within months of his performing community service. (Pl.'s LR56.1(b)(3)(B) ¶ 149.) Broukal told Charlie that he was his probation officer. (*Id.* ¶ 148.) Charlie believed that Broukal had the right to report anything that he did wrong. (*Id.* ¶ 146; Pl.'s Ex. 14, Charlie Mihalovits Dep., at 45.) Charlie was scared of Broukal in every way. (Pl.'s LR56.1(b)(3)(B) ¶ 176.)

In early August 1998, late one evening, Charlie was walking in Blue Island, and Broukal stated to Charlie that it was past curfew and offered to give him a ride home. (Defs.' LR56.1(a)(3) ¶ 133.) Charlie accepted and got into Broukal's personal van. (*Id.* ¶ 134.) Broukal took off Charlie's pants and fondled him. (*Id.* ¶ 138; Pl.'s LR56.1(b)(3)(B) ¶ 152.) When Charlie became upset, Broukal told him that as his supervisor, Broukal could get Charlie in even more trouble and

that no one would believe Charlie because he was already in trouble with the police department. (Pl.'s LR56.1(b)(3)(B) ¶ 154.)

The second incident of abuse occurred late one evening when Broukal told Charlie, who again was walking in Blue Island late one evening, that he was violating his probation by being out after curfew. (*Id.* ¶¶ 155-58.) Broukal drove Charlie in his personal van to Broukal's house, fondled and performed oral sex on Charlie, and videotaped the abuse. (*Id.* ¶¶ 158, 161-62.)

The third incident occurred when Charlie and Frank, along with other children and adults, including Crestwood Juvenile Officer Werner, went to Broukal's Michigan cottage for the weekend. (*Id.* ¶ 165.) After coming home from drinking at a local bar, Broukal woke Charlie up, brought him downstairs, and sexually abused him. (*Id.* ¶ 167.)

The fourth incident occurred when Broukal saw Charlie in Blue Island and told Charlie he would drive him home. (*Id.* ¶ 169.) Broukal got Charlie into the back of his van and despite Charlie's resistance, fondled him and attempted to force Charlie to touch Broukal and perform oral sex on Broukal. (*Id.* ¶¶ 170-72.)

Charlie's brother, Frank, who was eleven years old at the time, states that in one incident, he was also sexually abused by Broukal, whom Frank knew to be Charlie's probation officer, a police officer, and a firefighter. (*Id.* ¶¶ 182-83, 189, 190.) Frank met Broukal when Frank visited the Blue Island Fire Department while Charlie performed his community service. (*Id.* ¶ 181.) Frank also saw Broukal when he stopped by the Mihalovits' house a couple of times. (*Id.* ¶ 184.)

Charlie mentioned to Broukal that Frank wanted to play football, and Broukal arranged and paid for Frank to play football for the Untouchables for whom Broukal volunteered as coach. (*Id.* ¶¶ 185-86.) Broukal was not Frank's coach. (Defs.' LR56.1(a)(3) ¶ 190.) Frank played football for

one month and quit after two games. (*Id.* ¶¶ 191, 193.) Frank was never alone with Broukal while he participated in the Untouchables and was never touched by Broukal while he was playing football, or while he was at a football function, practice, or game. (*Id.* ¶¶ 194-95.)

In December 1998, days prior to Christmas, Broukal called the Mihalovits' home to say he was stopping by to talk to Frank about his Christmas gift. (*Id.* ¶ 197; Pl.'s LR56.1(b)(3)(B) ¶ 187.) When Broukal pulled into the driveway in his van, Frank came out and got into the van. (Pl.'s LR56.1(b)(3)(B) ¶ 188.) Broukal pulled Frank onto his lap and put his hands down Frank's pants and sexually molested Frank. (*Id.* ¶ 189; Defs'. LR56.1(a)(3) ¶ 201.)

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56(c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering the evidence submitted by the parties, the court does not weigh it or determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All facts must be viewed and all reasonable inferences drawn in the light most favorable to the non-moving party. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). "If no reasonable jury could find for the party opposing the motion, it must be granted." *Hedberg v. Ind. Bell Tel. Co., Inc.*, 47 F.3d 928, 931 (7th Cir. 1995).

## I. Section 1983 (Count V)

Plaintiff has sued defendants for deprivation, under color of state law, of Charlie and Frank Mihalovits' liberty interest in bodily integrity as guaranteed by substantive due process under the Fourteenth Amendment to the U.S. Constitution. Section 1983 "creates a federal cause of action for 'the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States.'" *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994)). "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights conferred elsewhere." *Id.* To state a claim under section 1983, a "plaintiffs must show (1) action taken under color of state law, ... [and] (2) a deprivation of a right protected by the Constitution." *Brown v. City of Lake Geneva*, 919 F.2d 1299, 1301 (7th Cir. 1990).

### A. Broukal Sued in his Individual Capacity

In support of their motion for summary judgment, defendants argue that Thomas Broukal was not acting under the color of state law when he sexually abused Charlie and Frank Mihalovits.[7] The Court disagrees with regard to plaintiff's claim against Broukal in his individual capacity based on his abuse of Charlie and agrees with regard to the claim against Broukal based on the abuse of Frank.

---

[7]Plaintiff's section 1983 claims against the Village of Crestwood, the City of Blue Island, the Blue Island Civil Service Commission, and Crestwood Mayor Stranczek, Crestwood Police Chief Arvanites, and Broukal in their official capacity are based on policies, customs or practices that supply the "under color of law" requirement under section 1983. Thus, contrary to defendants' mistaken assertions otherwise (*see* Defs.' Joint Mem. Supp. Summ. J., at 3, 18), such defendants would not be entitled to summary judgment on the ground that Broukal did not act under color of state law. *See, e.g., Gibson v. City of Chicago*, 910 F.2d 1510, 1519-20 (7th Cir. 1990); *Padilla v. d'Avis*, 580 F. Supp. 403, 406 (N.D. Ill. 1984).

7

"Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). The Supreme Court has stated that "under 'color' of law means under 'pretense' of law" and that "[a]cts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Screws v. United States*, 325 U.S. 91, 111 (1945). "Thus, one who is without actual authority, but who purports to act according to official power, may also act under color of state law." *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3rd Cir. 1994). "The important consideration, however, in determining whether an officer is acting under color of state law is the nature of the specific acts performed." *Latuszkin v. City of Chicago*, 250 F.3d 502, 505-06 (7th Cir. 2001).

First, Broukal relies on *White v. Scrivner Corp.*, a section 1983 case in which the court stated that off-duty police officers working as store employees did not act under the color of state law in detaining suspected shoplifters until the police arrived because such conduct is not an action exclusively associated with the state. 594 F.2d 140, 144 (5th Cir. 1979). Unlike the store employees in *White*, in the instant case, it is undisputed that Broukal held the position of part-time police officer for Crestwood and full-time firefighter for Blue Island and it cannot be disputed that Broukal's actions with regard to his purported "probation officer authority" over Charlie Mihalovits is activity exclusively associated with the state. Thus, the Court is not persuaded that *White* is dispositive of plaintiffs' section 1983 claim based on the abuse of Charlie.

However, the record is devoid of evidence to support a reasonable inference that Broukal displayed or purported to display any authority either as a Crestwood police officer or as a Blue Island firefighter with regard to Frank Mihalovits. (Defs.' LR56.1(a)(3) ¶¶ 186-202; Pl.'s

LR56.1(b)(3)(B) ¶¶ 181-190.)    Although the record shows that Frank, as well as his mother

Charlotte and brother Charlie, believed that Broukal was Charlie's probation officer and that Broukal

was a police officer and a fire fighter, this in and of itself is insufficient to establish that Broukal was

acting under the color of law when he called the Mihalovits residence days prior to Christmas 1998,

stopped by the residence to talk to Frank about what he wanted for Christmas, and sexually abused

Frank while Frank was in Broukal's van just outside the Mihalovits' residence. *See Roe v. Humke*,

128 F.3d 1213, 1217 (8th Cir. 1997) ("[T]he knowledge of [the officer's] status alone by [victim]

and [his] parents is not sufficient to convert the actions [the officer] took in the pursuit of his private

interests into action taken under color of state law").    There is not even a scintilla of evidence to

support that Broukal was acting or purporting to act in his official capacity or that he was exercising

or purporting to exercise his responsibilities pursuant to state law when he sexually abused Frankie

Mihalovits.    Based on the record before the Court and viewing all facts in favor of plaintiff, the

Court grants defendants' motion for summary judgment as to plaintiff's section 1983 claim against

Broukal in his individual capacity based on the abuse of Frank.

Next, Broukal relies on *Latuszkin v. City of Chicago,* 250 F.3d 502, 505 (7th Cir. 2001),

*Becerra v. Asher,* 105 F.3d 1042, 1047 (5th Cir. 1997), *Barna v. City of Perth Amboy*, 42 F.3d 809,

817-18 (3rd Cir. 1994), and *D.T. v. Independent School District No. 16*, 894 F.2d 1176, 1178 (10th

Cir. 1990). In *Latuszkin*, the court upheld the dismissal of a section 1983 complaint because plaintiff

failed to allege that the off-duty police officer, who struck and killed plaintiff's wife when driving

home from a party, acted under color of state law, *i.e.*, engaged in police activity, displayed any

police power, or possessed any indicia of his office at the time of the accident. 250 F.3d at 505. In

*Becerra*, the court held that a teacher's sexual abuse of a former student did not occur under the color

of state law because the abuse occurred more than five months after the student withdrew from the teacher's school and the teacher was not the student's teacher before, during, and after the abuse. 105 F.3d at 1047. In *Barna*, where two off-duty police officers, who were not in uniform but were armed with service revolvers and night sticks, beat up one of the officers' brother-in-law, the Court held that the officers' conduct was not under color of state law because they were not acting within their jurisdiction and not even purporting to act with police authority. 42 F.3d at 817. In *D.T. v. Independent School District No. 16*, the court held that a teacher's sexual abuse of students during fund-raising activities for a summer basketball camp, which was not associated with the school district at which teacher taught and students attended, was not an action under the color of state law because there was no indicia of state action in part because the teacher was on summer vacation. 894 F.2d at 1178.

With regard to plaintiff's section 1983 claim based on the abuse of Frank, *Latuszkin, Barna*, and *D.T.* are similar to the case before the Court. As stated above, plaintiff has failed to allege, and there is no evidence in the record to support, that Broukal engaged in police activity, displayed any police power, or possessed any indicia of his position as Blue Island firefighter or Crestwood police officer when he abused Frank. Broukal and Frank were in his personal van during the incident, and Frank is unsure whether Broukal was in uniform or not. (Pl.'s LR56.1(b)(3)(B) ¶ 188; Pl.'s Ex. 25, Frank Mihalovits Dep., at 101.) As stated above, Frank's knowledge that Broukal was a firefighter, police officer, and Charlie's probation officer, in and of itself, is not enough to transform Broukal's actions on the night he abused Frank into conduct under the color of state law.

However, with regard to plaintiff's section 1983 claim based on the abuse of Charlie, unlike the plaintiffs in *Latuszkin, Becerra, Barna*, and *D.T.*, plaintiff in the instant case has alleged and

raised more than a scintilla of evidence that Broukal displayed his power specifically as Charlie's purported supervisor of community service at the Blue Island Fire Department and as a purported juvenile police officer of Crestwood, the municipality in which Charlie was arrested for shoplifting. Viewing the record in the light most favorable to plaintiff, this display of power occurred before, during, and after the abuse of Charlie. It is undisputed that Crestwood Juvenile Officer Werner, who allowed Charlie to serve community service instead of bringing charges in juvenile court after Charlie's arrest for shoplifting at Target in Crestwood, told Charlie that he was to report to Broukal at the Blue Island Fire Department to serve his community service. (Pl.'s LR56.1(b)(3)(B) ¶¶ 19-31, 34.) He told Charlie that Broukal would be the person who would inform Werner as to whether Charlie's community service was successfully completed. (*Id.*) It was Werner's practice to tell juvenile offenders that if they failed to complete their community service successfully, they could end up going to court if the State's Attorney filed charges. (*Id.* ¶ 31.) Further, Broukal told Charlie he was his "probation" officer and that within months of Charlie's stint at the Blue Island Fire Department, Broukal told Charlie concurrently with the first two incidents of sexual abuse that Charlie was violating his "probation" by being out after curfew and offered to drive him home. (*Id.* ¶¶ 148, 154, 157.) It is undisputed that Broukal told Charlie he was already in trouble with the police department and that, with Broukal as Charlie's supervisor, Charlie "could get in more trouble." (*See* Pl.'s Ex. 14, Charlie Mihalovits Dep., at 61.) A reasonable jury could infer from Broukal's comments that he would make trouble for Charlie if he did not comply with Broukal's requests. The Court, in particular, finds risible defendants' contention that Broukal's status as a police officer and firefighter did not cloak him with any greater authority than an ordinary citizen. Although no insinuation of a "probation violation" occurred concurrently with the third and fourth

incidents of sexual abuse of Charlie, a reasonable jury could infer from Broukal's earlier comments regarding probation violations that Charlie's noncompliance with the latter two incidents of sexual abuse would also create trouble for Charlie with the police regarding his shoplifting offense. Viewing all facts in favor of the plaintiff, the record shows that this case involves a police officer and firefighter's use of the authority bestowed upon him by Blue Island and Crestwood not only to create the opportunity to sexually abuse Charlie Mihalovits, but also to effectuate and cover up the sexual abuse through threats to abuse that authority. Accordingly, the Court finds *Latuszkin, Becerra, Barna,* and *D.T.* inapposite with regard to the claim based on Charlie's abuse.

Broukal, the only defendant sued in his individual capacity, opines that he is entitled to qualified immunity because "reasonable officers could disagree as to whether he was acting under color of law during any of the incidents of alleged abuse such that his conduct violated a clearly established constitutional right." (Defs.' Joint Mem. Supp. Mot. Summ. J., at 17.) Whether Broukal reasonably believed "he was acting under color of law" is not the proper inquiry to determine qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

> To evaluate a claim of qualified immunity, we engage in a two-step analysis. First, we determine whether the plaintiffs' claim states a violation of their constitutional rights. Then, we determine whether those rights were clearly established at the time the violation occurred. If the rights were clearly established, the official may be liable for monetary damages and the suit proceeds to the next stage. If the rights were not clearly established, then the official is immune from suit and the claim is dismissed.

*Jacobs v. City of Chicago,* 215 F.3d 758, 766 (7th Cir. 2000) (citations omitted).

First, plaintiff's claim that Broukal deprived Charlie of his constitutional right to substantive due process when Broukal sexually abused him properly states a violation of constitutional rights. "It is a promise of the Constitution that there is a realm of personal liberty which the government

may not enter." *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 847 (1992). Substantive due process protects fundamental rights enumerated in the Constitution and other significant interests that relate "to marriage, family, procreation, and the right to bodily integrity." *Kraushaar v. Flanigan*, 45 F.3d 1040, 1047 (7th Cir. 1995). Thus, plaintiff's claim properly states a violation of their liberty interest in bodily integrity.

Second, that right was clearly established in 1998 when the abuse occurred. *See Haberthur v. City of Raymore*, 119 F.3d 720, 723 (8th Cir. 1997) (stating that police officer's threat of adverse police action in relation to sexual assault states actionable claim for substantive due process violation); *see also Wudtke v. Davel*, 128 F.3d 1057, 1059 (7th Cir. 1997) (holding that, if proven, right to substantive due process based on liberty interest in bodily integrity would be deprived where school district superintendent sexually assaulted teacher and used his official position to compel her to cooperate by threats including termination of employment); *Doe 1 v. Peterson*, No. 97 C 6674, 1998 WL 603274, at *4 (N.D. Ill. Sept. 9, 1998) (holding that plaintiffs had alleged constitutional injury where assistant state's attorney misused his office to obtain sexual favors for dismissing traffic violations). Based on the record before the Court and viewing the facts in the light most favorable to plaintiffs, a reasonable person in Broukal's position would have known that he was violating a liberty interest in bodily integrity as a result of his sexual assaults of Charlie. Further, we disagree with Broukal and find that no reasonable officer could have doubted that he was acting under color of law in telling a minor that as his supervisor and probation officer he could get the minor in trouble with the police or that as his probation officer he had a right to report anything Charlie did wrong or that he was in violation of curfew and must allow himself to be driven home. Therefore, based on the disputed facts in the record, Court holds that Broukal is not entitled to qualified immunity

13

with regard to the abuse of Charlie. With regard to Broukal's abuse of Frank, as stated above, Broukal's motion for summary judgment is granted because there is no evidence that he acted under color of state law at the time of the abuse.[8]

In sum, the Court grants in part and denies in part defendants' summary judgment motion as to plaintiff's section 1983 claim against Broukal in his individual capacity. The motion is granted with regard to plaintiff's section 1983 claim based on the abuse of Frank and denied with regard to the claim based on the abuse of Charlie.

### B. Crestwood, Blue Island, and the Blue Island Civil Service Commission

With regard to plaintiff's claims against the municipalities, it is well accepted that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Accordingly, a municipality can only be held liable under section 1983 if a custom or policy of the municipality was a cause of the plaintiff's injury. *Latuszkin*, 250 F.3d at 504-05. To establish a custom or policy, a plaintiff must show that his constitutional injury was caused "by (1) the enforcement of an express policy of the City, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Id.* at 504. The "burden is on the plaintiff to demonstrate the essential policy or custom." *Smith v. Chicago Sch. Reform Bd. of Trs.*, 165 F.3d

---

[8]As stated, the Court finds that Broukal is not entitled to qualified immunity as to plaintiffs' claim based on the abuse of Charlie and that his conduct with regard to Charlie constituted state action. Defendants appear to have put all of their eggs in the "no action under the color of state law" and "qualified immunity" basket with regard to Broukal sued in his individual capacity. (*See* Defs.' Joint Mem. Supp. Summ. J, at 17-18.) Because defendants fail to address the "deprivation of a constitutional right" requirement with regard to Broukal sued in his individual capacity, the Court denies defendants' motion for summary judgment as to plaintiff's section 1983 claim against Broukal sued in his individual capacity for the abuse of Charlie.

1142, 1149 (7th Cir. 1999). Further, there must be a direct causal connection between the municipal custom or policy and the constitutional deprivation. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 824-25 n.8 (1985); *D.T. v. Indep. Sch. Dist. No. 16*, 894 F.2d 1176, 1193 (10th Cir. 1990).

Defendants argue that the Village of Crestwood, the City of Blue Island, and the Blue Island Civil Service Commission did not have a custom or policy that constituted deliberate indifference or proximately caused Charlie or Frank's injuries. Plaintiff disagrees and states that (1) defendants' decision to reappoint or retain Broukal, and (2) Werner's placement of Charlie in a community service program under the authority of Broukal and Crestwood and Blue Island's lack of supervision and training regarding employees participating in the juvenile community service program (hereinafter "Juvenile Community Service Policies") reflect defendants' deliberate indifference to Charlie and Frank's substantive due process rights, which caused the deprivation of those rights.

First, plaintiff claims that Crestwood, Blue Island, and the Blue Island Civil Service Commission were deliberately indifferent to the constitutional rights of Charlie and Frank Mihalovits when Crestwood Police Chief John Hefley rehired Broukal as a part-time police officer in approximately April 1994 and the Blue Island Civil Service Commission did not terminate Broukal as a firefighter after his conviction in 1993 for child neglect. "[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997). "The fact that inadequate scrutiny of an applicant's background would make a violation of rights more *likely* cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific

constitutional violation." *Id.* at 410-11. "Where a claim of municipal liability rests on a single decision, not itself representing a violation of federal law and not directing such a violation, the danger that a municipality will be held liable without fault is high." *Id.* at 408. "To prevent municipal liability from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* at 410.

Even if plaintiff could establish that the final policymaking authorities for Blue Island, Blue Island Civil Service Commission, and Crestwood decided to retain or rehire Broukal with full knowledge of the details of the Arroyo incident in 1992, *i.e.*, the charge against Broukal for sexual abuse (and subsequent acquittal) and his conviction for child neglect for providing alcohol to a minor, summary judgment is proper as to the decisions to retain and reappoint Broukal. Plaintiff has failed to establish a genuine issue as to a material fact with regard to a direct causal link between the hiring/retention decisions and the abuse of Charlie and Frank. Crestwood's reappointment of Broukal as a part-time police officer in 1994 and Blue Island and the Blue Island Civil Service Commission's retention of Broukal as a fire fighter in 1993 after the Arroyo incident occurred four to five years prior to the abuse of the Mihalovits brothers in 1998. Based on the record before the Court, the relationship between these events is too attenuated to create liability on the part of Blue Island, Blue Island Civil Service Commission, or Crestwood. *See D.T. v. Indep. Sch. Dist. No. 16*, 894 F.2d 1176, 1178 (10th Cir. 1990) (holding "that the acts of molestation practiced by Epps upon the plaintiffs on June 13-14, 1984, constituted too remote a consequence of the 1981 hiring and investigation policy to impose liability upon the School District under the civil rights law"). The sexual abuse of Charlie and Frank was not a plainly obvious consequence of these defendants' reappointment or retention decisions.

Next, plaintiff argues that Crestwood and Blue Island's Juvenile Community Service Policies constitutes deliberate indifference to Charlie and Frank's substantive due process rights. Defendants, of course, disagree.

With regard to Crestwood Juvenile Police Officer Werner's placement of Charlie in the community service program at the Blue Island Fire Department under the authority of Broukal and the lack of supervision and training, plaintiff has established a policy with regard to Crestwood because Werner is the final policymaking authority concerning those matters. The Illinois Juvenile Court Act vests a juvenile police officer with the authority to make a station adjustment and refer the juvenile to serve community service. 705 ILL. COMP. STAT. 405/3-8(3)(d). It is undisputed that Werner was given the authority to set up community service at Blue Island Fire Department and to choose the sites where community service would be performed. (Defs.' LR56.1(a)(3) ¶¶ 66-67; Pl.'s LR56.1(b)(3)(B) ¶¶ 21-22.) In addition, the Illinois Juvenile Court Act also vests a juvenile police officer with the authority to monitor the community service. 705 ILL. COMP. STAT. 405/3-8(3)(d). Further, clearly the Crestwood Police Department has authority to supervise and train its police officers regarding the employees participating in the juvenile community service program, but did not do so.

With regard to Blue Island's Juvenile Community Service Policies, plaintiff has also established that the Blue Island Fire Chief is vested with the authority to supervise and monitor firefighters and to initiate disciplinary action if necessary and that the Blue Island Civil Service Commission had the authority to approve of such discipline. (Pl.'s LR56.1(b)(3)(B) ¶ 82; Pl.'s Ex. 8, Peloquin Dep., at 16-18.) As stated above, just as the Illinois Juvenile Court Act vested in Werner as Crestwood's juvenile police officer the authority to monitor the community service of Charlie,

the Act also vested the juvenile police officer of Blue Island with the authority to monitor such community service, although no such monitoring occurred. *See* 705 ILL. COMP. STAT. 405/3-8(3)(d). Viewing all the facts in the record in the light most favorable to plaintiff, a jury could reasonably find that plaintiff has established that Blue Island's failure to supervise the community service of those juveniles in its care amounted to a policy.

However, the Court holds that plaintiff has failed to establish a genuine issue as to a material fact regarding whether Crestwood and Blue Island's Community Service Policies constituted deliberate indifference to Frank's liberty interest in bodily integrity. No rational jury could find that the policies at issue caused Frank's injury. The only evidence of causation is that Frank met Broukal when he visited the Blue Island Fire Department on one occasion while Charlie's was performing his community service and that Frank knew that Broukal was Charlie's probation officer. It would be unreasonable to infer from these two facts that Broukal's sexual abuse of Frank was caused by any policy of Blue Island or Crestwood. Charlie ended his community service in mid June 1998 and Broukal sexually abused Frank in December 1998. There is no evidence to support that Broukal ever told Frank that he would report a parole violation with regard to Charlie or that Charlie ever told Frank that Broukal would get Charlie into more trouble if he did not do what Broukal requested. The record before the Court contains a mere scintilla of evidence to support the defendants' policies' causation of Frank's injury, and, unfortunately for plaintiff, that is insufficient to survive a summary judgment motion.

Next, the Court holds that plaintiff has created a triable issue as to whether Crestwood's Community Service Policies constituted deliberate indifference to Charlie's substantive due process rights. It is undisputed that Werner was aware of the criminal proceedings against Broukal and the

18

outcome of the trial relating to the Arroyo incident. (Pl.'s LR56.1(b)(3)(B) ¶ 35.) Despite this

knowledge, Werner made no efforts to obtain other information regarding Broukal's arrest on these

criminal charges other than talking to Broukal himself about the outcome of the trial. (*Id.* ¶ 36.)

Despite this knowledge, Werner had set up the Blue Island Fire Department as a community service

site for juveniles because Broukal worked there as a fire fighter. (*Id.* ¶ 22.) Although Werner knew

of Broukal's conviction for child neglect resulting from his providing alcohol to a minor and

Broukal's being charged of criminal sexual abuse to a minor, this did not cause Werner any concern

regarding his assignment of juveniles to report to Broukal at the Blue Island Fire Department. (*Id.*

¶ 39.) Werner placed Charlie at the Blue Island Fire Department under Broukal's authority and

assigned Broukal as the contact for any juvenile who performed community service at the Blue

Island Fire Department. (*Id.* ¶¶ 18, 22-23.) A reasonable jury could conclude from these facts that

Werner's decision to assign Charlie to perform his community service at the Blue Island Fire

Department and his reliance on Broukal to monitor and report whether Charlie successfully

completed such service constituted deliberate indifference to Charlie's liberty interest in bodily

integrity. A rational jury could also find that Crestwood's failure to train and supervise its officers

regarding its employees participation in the juvenile community service program rose to the level

of deliberate indifference to Charlie's constitutional rights and caused that deprivation.

A triable issue also exists as to whether Blue Island's Juvenile Community Service Policies

reflect deliberate indifference to Charlie's constitutional rights. For purposes of the summary

judgment motion, the Court views as true the disputed facts that (1) in 1992, Officer Libby of the

Blue Island Police Department stated that he was not surprised that Broukal molested Richard

Arroyo because the department had been watching Broukal; (2) the Blue Island Police Chief stated

that Broukal had molested children before but that parents did not follow through and the cases did not proceed to court; (3) the Blue Island Police Chief knew of other incidents with Broukal and that the Police Department hoped that there would be a snowball effect after Richard Arroyo came forward. (Pl.'s LR56(b)(3)(B) ¶¶ 109-111.) Further, another Blue Island firefighter testified that the Fire Chief was present during discussions about concerns that Broukal should not have been allowed to work at the Blue Island Fire Department subsequent to the Arroyo incident in 1992. (Pl.'s Ex. 25, Cheversia Dep., at 107.) However, between May 1993 and April 1996, Fire Chief Woods stated that Broukal was never disciplined for the incident and his duties and role as a firefighter were never restricted or limited in any way. (Pl.'s Ex. 30, Woods Dep., at 9, 32.) A firefighter stated he had observed Broukal directing children at the fire station and knew that the juveniles performing community service work there "came through Mr. Broukal." (*Id.*, at 99-100.) Given the facts at hand and reading all reasonable inferences in favor of plaintiff, a rational jury could find that Blue Island's failure to train and supervise its employees with regard to which employees were eligible for participation in the juvenile community service program shows that Blue Island was deliberately indifferent to Charlie's constitutional rights (as well as those rights of other juveniles entrusted to the community service program) and caused the deprivation of Charlie's rights.

## II. Frank's Tort Claims against Blue Island Untouchables Football Organization

Plaintiff has sued defendant Blue Island Untouchables Football Organization ("BIUFO") for negligent hiring, negligent retention, and negligent supervision. Plaintiff felt no need to burden the Court with any legal analyses to support any of these claims, and the Court finds that the lack of dedicated space in plaintiff's brief to these claims coincides with their lack of merit.

In order to succeed on any negligence theory, plaintiff must establish that: (1) defendant owed plaintiff a duty of care; (2) defendant breached that duty; (3) and defendant's breach was the proximate cause of plaintiff's injury. *Rhodes v. Ill. Cent. Gulf R.R.*, 665 N.E.2d 1260, 1267 (Ill. 1996). When a plaintiff fails to establish a genuine issue as to a material fact regarding any one of these required elements, then summary judgment must be granted in favor of defendant. *See Montgomery v. Petty Mgmt. Corp.*, 752 N.E.2d 596, 599 (Ill. App. Ct. 2001).

Even if the Court were to assume that plaintiff could establish that Broukal was an employee of BIUFO, that BIUFO owed Frank a duty of care, and that BIUFO breached that duty, plaintiff would still not prevail on any of the negligence theories. Plaintiff has failed to create a triable issue as to causation.

The following facts are undisputed. Frank met Broukal in mid to late June or early July 1998 before he ever joined the BIUFO later in 1998. (Defs.' LR56.1(a)(3) ¶¶ 79, 83, 181.) As a result of Charlie's inquiries, Broukal arranged for Frankie to play football for the Untouchables. (Pl.'s LR56.1(b)(3)(B) ¶ 185.) Although Broukal was a coach for BIUFO, he was not Frank's coach. (*Id.*; Defs.' LR56.1(a)(3) ¶ 190.) Frank played football for the BIUFO for one month and quit after playing two games. (Defs.' LR56.1(a)(3) ¶ 191, 193.) Frank was never touched by Broukal while he was playing football or at a football function, practice, or game, and Frank was never alone with Broukal while he participated in football. (*Id.* ¶¶ 194-95.) In December 1998, after Frank had quit playing football, Broukal called Frank's house to ask Frank what he wanted for Christmas, drove to Frank's house in his van, and when Frank got into his van to discuss his Christmas present, Broukal sexually abused Frank. (*Id.* ¶¶ 197-201.) Given these facts, and any rational inferences drawn

therefrom, it would be unreasonable for a jury to conclude that any possible negligence on the part of BIUFO was the proximate cause of Frank's injury.

Accordingly, the Court grants defendants' motion for summary judgment as to Counts III and IV of the Second Amended Complaint. BIUFO is hereby terminated as a party.

### Conclusion

For the forgoing reasons, the Court grants in part and denies in part defendants' motion for summary judgment [108-1]. The motion is granted as to (1) section 1983 claims based on the decisions to reappoint and retain Broukal; (2) all section 1983 claims based on the abuse of Frank; and (3) all claims against the Blue Island Untouchables Football Organization, which is terminated as a party. The motion is denied as to (1) plaintiffs' section 1983 claim against Broukal in his individual capacity based on the abuse of Charlie and (2) plaintiffs' section 1983 claims against Crestwood, Blue Island, the Blue Island Civil Service Commission, as well as Stranczek, Arvanites, and Broukal sued in their official capacity based on the Juvenile Community Service Policies as to the abuse of Charlie. Thus, these surviving section 1983 claims, as well as the state law claims against Broukal in Counts VI and VII, remain for trial.

**SO ORDERED.**                    **ENTER:**    3/28/03


HON. RONALD A. GUZMÁN
United States Judge

22